Filed 10/11/24  In re George C. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re GEORGE C. et al., Persons Coming Under the Juvenile Court Law. | B327037 (Los Angeles County Super. Ct. No. 22CCJP04422) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. X.C. et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner.  Affirmed.

Emery El Habiby, by appointment of the Court of Appeal, for Defendant and Appellant X.C.

David M. Yorton, Jr., by appointment of the Court of Appeal, for Defendant and Appellant Jorge C.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Mother and father appeal the jurisdictional findings made by the juvenile court under Welfare and Institutions Code section 300, subdivision (b)(1),[1] arguing they are not supported by substantial evidence. The parents also challenge certain dispositional orders made by the juvenile court. We conclude parents' contentions are without merit and affirm the juvenile court's jurisdictional findings and dispositional orders as to both parents.

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve—and provide context for—the issues presented on appeal.

## RELEVANT BACKGROUND

X.C. (mother) and Jorge C. (father) have four children together: George (born 2005), Xi. (born 2012), Genesis (born 2013), and Abigail (born 2015). The family came to the attention of the Department when someone called the police on September 15, 2022, to report domestic violence at the family home. When the police arrived, the parents admitted they had been arguing but initially claimed there was no physical contact between them. The officers observed injuries on mother and physical damage to the home, including a hole in the wall of parents' bedroom and shattered glass in parents' bedroom

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

door. Mother said the glass in the bedroom door shattered accidentally when she pushed against the door to enter the parents' bedroom.

Upon further questioning, the parents admitted the argument became physically violent. Mother told the police that father had used both hands to push her down to the ground, sprayed air freshener in her eyes, and punched her in the face. Father told the police that mother punched him in the chest multiple times. Father admitted he pushed mother twice to try to get away from her.

Father showed the police a video recording of the incident that he took on his phone. As described in the police report, the video showed mother punching father multiple times in the living room of the house. In response, father pushed mother, causing her to fall against the wall. When the children's maternal grandmother tried to intervene to calm mother down, mother struck her as well. Mother then resumed her attack on father, punching him multiple times. In response, father again pushed mother away, this time causing her to fall to the ground. When Mother got up, she started throwing unidentified objects at father. Mother then grabbed a broomstick from the kitchen and started swinging it at father. On the fourth swing, the glass in the bedroom door could be heard shattering.

The police interviewed the four children. With the exception of George, all children reported being asleep during the argument. George told the police that he was only half-asleep at the time and heard the argument but did not know what it was about.

The police determined mother was the primary aggressor and arrested her for domestic battery. Mother gave a statement while in police custody. In her statement, mother said the argument started because she drank two beers and father did not like it when she drank alcohol. She said she had

3

been sick for the last week and took cold medication before drinking the two beers. She recanted her previous statement that father punched her and said she did not remember how she sustained her injuries.

When the Department interviewed the parents five days later, they immediately began minimizing the event. Father told the Department the police lied about the content of the video and embellished the incident. Father denied that mother punched him, swung a broomstick at him, or struck maternal grandmother. Father admitted mother got a broom from the kitchen but said she simply used it to sweep up the broken glass from the bedroom door. He also said he had no recollection of mother throwing objects at him. When the Department asked to see the video previously shown to the police, father said he had deleted it from his phone. Mother denied ever swinging a broomstick at father but otherwise said she could not recall any other events described in the police report.

## DISCUSSION

### I. *Justiciability*

On May 25, 2023, the juvenile court terminated jurisdiction over George because he reached the age of majority. At a section 364 review hearing on August 10, 2023, the juvenile court terminated jurisdiction over Xi., Genesis, and Abigail with all three children remaining in the parents' custody.

The parties agree that the juvenile court's termination of jurisdiction over the children renders this case moot and our review is discretionary under *In re D.P.* (2023) 14 Cal.5th 266 (*D.P.*). Several factors may be considered in deciding whether to review jurisdictional findings in an otherwise moot appeal. (*Id.* at pp. 283, 285–286.) These factors include

4

whether the finding could be prejudicial to the appellants or potentially impact future dependency proceedings. (*Id*. at p. 283.) Courts may also consider whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct. (*Id*. at pp. 285–286.) Additionally, courts can consider whether the case became moot due to parents' prompt compliance with their case plans. (*Id*. at p. 286 ["Principles of fairness may thus favor discretionary review of cases rendered moot by the prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal"].) "The factors above are not exhaustive, and no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal." (*Ibid*.)

The section 300 petition filed by the Los Angeles County Department of Children and Family Services (the Department) alleged two counts against both parents: a-1 and b-1. At the combined jurisdictional and dispositional hearing, the juvenile court dismissed count a-1 and sustained count b-1 as alleged against both parents. Parents appeal the jurisdictional finding on count b-1.

As b-1 was the sole count sustained against both parents, the outcome of their appeals will determine whether they are "offending" or "non-offending" parents. (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 763 [a challenge to the sole jurisdictional finding against father was the difference between the father "being an 'offending' parent versus a 'non-offending' parent"].) The jurisdictional finding on count b-1 also serves as the basis for the dispositional orders that parents challenge on appeal. (*Id*. at pp. 762–763.) Additionally, the parties agree that it appears the juvenile court terminated jurisdiction over the children due to parents' prompt compliance

with their case plans. For these reasons, we exercise our discretion to consider parents' appeals on their merits.

II.   *Jurisdictional Findings*

Count b-1, alleged against both parents, claimed that mother and father "have a history of engaging in domestic disputes in the children's home and on at least one occasion it resulted in a violent altercation where the mother was the primary aggressor while she was intoxicated." The Department alleged the parents' "physical and verbal altercations" endangered the children's safety, created a detrimental home environment, and placed the children at substantial risk of physical harm. On appeal, mother and father argue there was insufficient evidence to sustain jurisdiction on this count. We disagree.

A.   *Legal Standards*

Section 300, subdivision (b)(1), allows a juvenile court to exercise jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] [t]he failure or inability of [his or her] parent . . . to adequately supervise or protect the child." Subdivision (b)(1) requires only that a parent has failed or is unable to adequately supervise or protect her child. The statute does not require negligent or culpable conduct by the parent. (*In re R.T.* (2017) 3 Cal.5th 622, 629–630 (*R.T.*).)

"The juvenile court need not wait until a child is seriously injured to assume jurisdiction if there is evidence that the child is at risk of future harm from the parent's . . . conduct." (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) The court may consider past events as an indicator of whether the child

6

faces a current risk of harm because "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) A parent's denial of wrongdoing or failure to recognize the negative impact of her conduct is also relevant to determining risk under section 300. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 (*A.F.*).) "[S]ection 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child." (*R.T., supra*, 3 Cal.5th at p. 624.)

To show the child faces a risk of harm at the time of the jurisdiction hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur." (*In re James R.* (2009) 176 Cal.App.4th 129, 136.) "While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations]." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

We review a juvenile court's jurisdiction finding for substantial evidence. (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.) We will affirm the finding if it is supported by evidence that is reasonable, credible, and of solid value. (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) We review the record in the light most favorable to the court's findings and draw all reasonable inferences from the evidence in favor of those findings. (*R.T., supra*, 3 Cal.5th at p. 633.)

B.    *Analysis*

 "[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of

7

encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) Children can be "put in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg." (*Ibid.*) "Both common sense and expert opinion indicate spousal abuse is detrimental to children." (*In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5.) "'Studies show that violence by one parent against another harms children even if they do not witness it.'" (*In re E.B.* (2010) 184 Cal.App.4th 568, 576.) Past violent behavior is the best predictor of future violence. (*Ibid.*)

Here, there was substantial evidence in the record from which the juvenile court could conclude that parents' ongoing domestic disputes presented a substantial risk of harm to the children. The principle thrust of mother and father's appeals is that the allegations of the petition stem from a single domestic dispute that occurred out of the children's presence. Mother and father claim this isolated incident is insufficient to give rise to the finding that the children faced a risk of harm. Contrary to parents' claims, the September 2022 altercation was not an isolated incident. The parents "reported a prior incident, about a year ago where they pushed each other during an argument." Mother also reported a separate incident where the police were called to the family home because mother and father were screaming at each other.

All four children also informed the Department that they had heard the parents fighting on prior occasions. Genesis's teacher also reported that on one occasion Genesis was crying in the classroom because her parents were fighting or arguing, causing mother to leave the house. Father told the police that mother gets aggressive when she has been drinking. George

8

corroborated this, telling the Department his parents argued when they were drunk and that mother was usually the one who started the arguments. Abigail told the Department that hearing her parents argue made her feel sad. Taken cumulatively, there was evidence in the record showing that mother and father had a history of loud domestic disputes in the children's presence, which escalated to domestic violence on at least two occasions within the last year before the petition was filed.

In sustaining count b-1 of the petition, the juvenile court also noted "We might have been in a different posture if the parents weren't minimizing the domestic violence incident that occurred in September. . . . [T]he biggest concern I have is the lack of appreciation of how this type of incident does place the children at risk." "[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision." (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044; accord *A.F.*, *supra*, 3 Cal.App.5th at p. 293.) There was substantial evidence in the record that the parents minimized the severity of the September 2022 altercation. After reporting to the police that the incident involved repeated instances of physical violence and showing the police a video corroborating these statements, father deleted the video evidence of the incident and the parents denied any physical violence occurred between them.

Having determined that substantial evidence supports the juvenile court's jurisdictional finding against both parents on count b-1, we affirm.

III. *Dispositional Orders*

Upon sustaining count b-1 against the parents, the juvenile court declared the children dependents of the court and ordered them placed with parents under the Department's supervision. The juvenile court issued case

9

plans for the parents. On appeal, mother and father challenge certain aspects of their respective case plans. We address their arguments separately.

    A.    *Legal Standards*

Section 362 authorizes the juvenile court to "direct any reasonable orders to the parents" of a dependent child as the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child including counseling or education programs. (§ 362, subds. (a) & (d).) "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).) The reunification plan "'must be appropriate for each family and be based on the unique facts relating to that family.'" (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1458.)

The juvenile court has "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re K.T.* (2020) 49 Cal.App.5th 20, 25 (*K.T.*).) This discretion "permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings." (*Ibid.*) We review the juvenile court's disposition orders for an abuse of discretion, reviewing factual findings underlying the orders for substantial evidence. (*In re I.R.* (2021) 61 Cal.App.5th 510, 522; *K.T., supra*, 49 Cal.App.5th at p. 25.)

B. *Father's Case Plan*

Father argues the juvenile court erred in requiring him to participate in individual counseling and a family preservation program. At the adjudication hearing, father did not object to the order for family preservation services and instead explicitly agreed to that component of his case plan. Accordingly, father has forfeited any right to challenge the order requiring him to participate in a family preservation program. (*In re T.G.* (2013) 215 Cal.App.4th 1, 14 (*T.G.*) ["'[a] party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court'"]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*) ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].)

With regard to the order for individual counseling, father's only argument on appeal is that because the jurisdictional finding against him on count b-1 was erroneous, there was no basis to order him to undergo individual counseling. As we have affirmed the juvenile court's jurisdictional finding against father on count b-1, father's argument regarding individual counseling must fail. Father provides no other basis to overturn this component of his case plan. As father has not demonstrated any abuse of discretion by the juvenile court, we affirm the juvenile court's dispositional orders concerning father.

C. *Mother's Case Plan*

Mother argues the juvenile court should not have ordered her to participate in individual counseling. However, mother did not object to the order for individual counseling at the adjudication hearing. As a result, mother has forfeited any claim of error with regard to this aspect of her case

11

plan. (*T.G.*, *supra*, 215 Cal.App.4th at p. 14; *S.B.*, *supra*, 32 Cal.4th at p. 1293.) Mother does not challenge any other aspect of her case plan, and accordingly the dispositional orders against her are affirmed.

## DISPOSITION

The juvenile court's jurisdictional findings and disposition orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.

MORI, J.